the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are advised to draw near and give their attention as this Court is now sitting. God save the United States and this Honorable Court. Good morning everyone and before we start Mr. Olson if you would permit me a point of Court privilege and that is to welcome our newest member on behalf of the entire Court all my colleagues I would like to extend a warm welcome to our newest colleague Judge Nancy Maldonado who is sitting with the Court for the first time today. Welcome Judge Maldonado. All right Mr. Olson you may proceed. May it please the Court I'm Jeff Olson I'm here representing John Sabo. 23 years ago this Court says that if through deliberate indifference the requirements of state law correctional officials kept him in prison too long as Eighth Amendment rights were violated even if the additional time was not very long. That was in Campbell v. Peters. All the cases that have been decided since then have taken that as a black letter statement that prison employees have a duty not to be deliberately indifferent when they learn of a serious risk of somebody being unlawfully kept in custody beyond the end of their sentence. Now the panel majority decision is sound. Let's take a tour of a few of the objections raised by the state and the dissenting opinion. We concede that there's no duty to screen everybody. We put the word duty in our complaint in a couple of places to preserve our ability to bring a state law negligence claim but there's no constitutional duty of deliberate indifference to get it right on the first time screening. If you get it wrong that's at most negligence. So you agree Mr. Olson that at the first screening when they were reviewing the probationary terms and they were using the wrong chart to do it that they did not have a constitutional duty at that point. Correct we do. And it's your argument that the constitutional duty kicked in once they learned that the chart they had been using was not accurate. Yes because. What is the basis of the Eighth Amendment constitutional duty at that point? Where are you getting that from? Because they had at that point they were on notice that there was this group of prisoners at serious risk of constitutional injury to it being kept in custody for over a long period of time. How big does that group have to be before it's a duty? 1, 10, 1,000, 1,500? One is big enough but the fact that it's more than one doesn't relieve the actors of that duty. If one person an ignorant or unreliable prisoner complains that they're being held too long that triggers very clearly a duty not to be deliberately indifferent. The constitutional harm here though is an excessive probationary term not being held too long. Correct. And I know we have said in our case law that probation is a term of confinement but that's the constitutional harm here, correct? Well, the constitutional protection is to be not kept in custody beyond the lawful limit. But the harm here is the probationary term because when they reviewed your clients and all the other inmates judgments, it's not his term of custody that was excessive. It was the probationary term, correct? Probation is a form of custody though. It was the probationary term that was unlawful. So you agree that that's what the constitutional harm here is, the excessive probationary term. Yes. It's like the distinction about between the initial screening and what their duty was when they learned of their error is like prison doctors. They may not have a duty to perform any medical screening when that's not going to add up to deliberate indifference, negligence at the most. But if they learned that a defined group of inmates is at a significant risk of serious illness, they have the very modest constitutional obligation not to be deliberately indifferent. How helpful is the line of medical cases to your argument here? Because the law is crystal clear that the eighth amendment imposes an affirmative duty at the prisons to provide the basic needs of inmates, which includes medical care. So how helpful, this is a different situation. How helpful is that line of cases to your argument? I think when you get to the point of knowledge of a serious risk, it's really helpful. Because at that point, the obligations are exactly the same. The constitutional duty to provide some basic level of medical care. I don't know where that gets enforced. But I know where medical cases come from. And that comes from prisoners, either in groups or individually, who are learned to be at serious risk of serious medical condition. And then the prison health authorities or doctors do nothing, or are otherwise deliberately indifferent. As basic as it is to receive medical care, isn't it equally as basic not to be kept in custody longer than one sentence? It is. It is a basic, basic aspect of eighth amendment jurisprudence now. Mr. Olson, if I could ask you a question about the causation issue that has been raised. The, you know, you cite Wisconsin statute that talks about the fact that if a term is correct, does that mean that in this situation, for example, that the, I understand that as alleged, the two defendants corrected, when they do correct a sentence, they then send it to the judge who issued the sentence as a courtesy. What does that mean in terms of what further action did the judge have to take, if any, in order for that corrected sentence to take effect? Yeah. In 2004 and 2005, this case arose, no judicial action was required, because Hicks and Haley would correct that judgment of conviction, and they'd send the corrected judgment to the probation agent, who would in turn send a copy to the judge as a courtesy. The judge might or might not want to correct the court record, but the operant document that controlled the fate of the offender was the judgment of conviction as corrected by Hicks and Haley, and they felt they had the authority to do that pursuant to the statute that you cite. So it's your position that under Wisconsin law, the judge did not have to take any further action in order for that sentence to be corrected? That's what we believe at that time, but the more important thing is what happened to the offenders. And maybe you want to make some argument that the judge should have done something when he got that corrected judgment to rectify the court record, but it didn't affect what happened to the offender. The offender got let off probation or let out of custody based on Hicks and Haley's corrected judgment of conviction. There's some suggestion that there's no duty to be other than deliberately indifferent, unless you know the specific identity of the person at serious risk of constitutional injury. The majority opinion recognized that objection and cited case law where the court has held that there is a duty to not be deliberately indifferent, even if it's a group of inmates who are at serious risk. Counsel, could you explain to me why it violates the Constitution of the United States for state administrative officials to carry out a state court's judgment as it was written? That's what happened here, right? Your complaint is that administrative officials didn't change the judgment. I'm trying to go in two steps. Is there a constitutional right to have administrative officials depart from the language of a judgment? Maybe not, but there is a counter to it. Second question. If state law says that administrative officials may depart from a judgment, does the Constitution of the United States require state officials to implement state law accurately? And act in the teeth of the judgment? Yes. No, but they have to do something. Why do they have to do something? Because they have an obligation not to be deliberately indifferent. Which decision of the Supreme Court provides your strongest support for the proposition that state officials must depart from the terms of a judgment? I'm not saying they must depart. No, I'm asking a concrete question about authority. What case do you want me to look at as your strongest case in the Supreme Court for the proposition that state officials must depart from the terms of a state court's judgment? I can't cite any cases in the penological context. I think that's because there are none. If you knew of some, I would really love to see them. There are in the warrant context, where a police officer gets a warrant signed by a judge, and he realizes the warrant is clearly unlawful. He's liable if he executes that warrant. But we don't need to go that far, because all Hicks and Haley had to do was something. And if the something they had chosen to do was to write this... Let me put it this way. Suppose a state official deliberately violates a state law, goes out of his way to violate a state law. Does that violate the Constitution of the United States? Not always. Pardon? Not always. Does it ever? If it works simultaneously, a violation of a constitutionally protected right. If there is an underlying constitutional right independent of the state law, that takes us back to my first question. Does the Constitution of the United States require state officials to depart from the terms of judgments? Well, I think sometimes it does, by analogy to the warrant cases. But that's not necessary here, because all Hicks and Haley had to do was something. They were departing from judgments all the time with their little correcting pens, but they didn't have to do that. They could have done what they changed their practice to do it later on. Right. I'm asking a concrete question about decisions of the Supreme Court. And you're telling me what in your ideal world ought to happen. I might agree with you completely about what ought to happen in the ideal world. But we need to know what the established law is. That's what's worrying me. Well, the closest I can come to Supreme Court is the warrant cases. But as I was trying to say, we don't need Hicks and Haley to depart from the judgment. We just need them to do something reasonable. And if that something reasonable is to write to the judge, as they would do today, and say, we found an unlawful aspect of this sentence and we think you should correct it. That would satisfy their constitutional obligation without interfering with or requiring them to act in the teeth of any state court's judgment. The state tries to distinguish cases where this court has found a duty not to be deliberately indifferent where there's a group of affected people, rather than just an individual at serious risk of constitutional injury in a couple of ways. One is, they say that in this case, there was some basic right, there was some basic constitutional duty. Well, we've covered that. We think there was a constitutional duty not to be deliberately indifferent when we learned of the injuries. We don't think that distinguishes this case from other cases where prison officials have learned of the prospect or serious risk of injury to groups of inmates. The state said that second, in the cases where this court has found a duty not to be deliberately indifferent, when the risk is aimed at a group rather than an individual, the state didn't have to know, the officials at issue didn't have to know the identity of the affected eventual victim in order to take some meaningful corrective action. Mr. Olson, what cases, when you say cases where we've talked about risk vis-a-vis groups, what cases do you have in mind? I think it's Brown versus Bunce. It's cited and discussed in the majority panel opinion. Well, in this case, Hicks and Haley didn't have to know the identity of any of the prisoners with an unlawfully long term of probation to take some reasonable action either. And they didn't have to re-review or reinvestigate thousands of judgments of conviction of all the inmates who'd come in over a period of many months. They could have just done something reasonable. They were the only ones who knew about this problem for all we know. Like what? What? Like what? Yeah. Give me an example of what they could have done and then you'd say, oh, no constitutional violation, even if your client, even if they didn't catch Mr. Szabo's error. He did something, it was enough to satisfy you under the Eighth Amendment, even though Mr. Szabo's term of imprisonment and probation was illegally extended. Here's what they could have done. They could have contacted Corrections Legal Counsel. Together, they could have formulated a plan. And I don't know the ins and outs of the Department of Corrections well enough to know everything that they could have done at that point. But they certainly could have sent out a circular to all the probation agents. All these people on probation have probation agents. And if you just add one item to the probation agents checklist for every visit with a probationer that says, look and see whether this person was put on probation for a class. That sounds like a review of every single person that went into the prison over those several years in some form. It sounds like they have to go back and check every single one of those in some form, whether it's them that does it or somebody else. But it wouldn't involve ever getting out a file for the purpose of reviewing it. It would involve just reviewing one aspect of a probationer's file. When the probationer came before the agent for something else, it might add 10 or 15 seconds to the probationer's encounter with their probationee, with the offender. And it would have been a light burden on everybody involved. Very practicable thing. Well, what about people that maybe were re-imprisoned because they committed a violation while on probation and so they didn't have a probation officer? In other words, someone's term of probation is illegally extended. They get out. They re-offend. They're re-arrested. They're back in jail. They don't have a probation officer. Who checks those? I don't know. But if I were the Department of Corrections legal counsel, I could come up with somebody. Well, isn't the point that factual development, if we're talking about what a reasonable action would be and, you know, what was confronting Hicks and Haley in these particular circumstances, so that we can see if it's at all analogous to prior cases like What would have been reasonable? What would have been too onerous? We simply don't know at this pleading stage. If the court decides that whether or not they had a duty not to be deliberately indifferent depends on whether there was something that they could have done that would have had a probability of success without too much burden on the system. And only if the court decides that, I think, does the case need to be developed further factually to explore those things about the Department of Corrections and what they might have done that I don't now know. But I don't think it depends on that. I think that they had an obligation to do something reasonable. And even if it only was going to wind up helping less than 100% of the affected probationers, they still had the obligation. If we move to the qualified immunity question, and particularly going back to just got his question guards to the brown case that you raised, I would be interested to know what would have put these record keepers on notice. That of the rule that if you are aware of a risk of unlawful probation terms, you are required under the Constitution to go back and make corrections to that sentence. So, I know we talked a little bit about brown, but can you just lay out for me the best cases that you have of that reasonable notice. Sample versus your third circuit and judge greasebox opinion that followed it very precisely that we quoted in our brief. Now in the sample case, we know that the official was put on notice that there was a term of in prison of a particular individual. And so, if we lay that against the facts of this case, what would have put those record keepers on notice cases like brown, but you have to put that together with the cases that find group risks in other contexts. I don't know that I can cite a case of group risk of unlawful incarceration. But it's very clear that the fact that it's a group doesn't extinguish the duty. And if you're there in the epicenter of responsibility. You have a duty. Well, if you can't cite a risk, a case of group risk of unlawful incarceration, how does that allow the law to be clearly established for purpose? Because the principles are absolutely clear and there's no gray area. Well, that makes me a little concerned when we look at the instruction from the district of Columbia case from the Supreme Court. Yeah. Excuse me, I didn't catch that. The district of Columbia versus Westby case. Yeah, well, we're instructed the can't be merely suggested by precedent. Mr. Olson, let me ask the question a different way. So, I think the challenge that you have. On qualified immunity is convincing us. That this is not an extension. Of existing law, in other words, you're the best case I think you have in your pocket is figs. But fixes is notice is it not there's knowledge. As to, you know, the plane, an individual person. And so here, when you make the point about brown, and you invoke the failure to protect cases, and you talk about medical care, there's, there's absolutely no question. That medical care has to be provided in prison to a group. No, no doubt about that, but when you get it, the nub of what judge Brennan is asking you here about extended. An extended sentence, a probationary sentence here. It's very hard to see how this is not an extension. Of of existing law. And the prop, the difficulty that you have is if it's an extension. You run into that language in the US Supreme Court's qualified immunity cases that say at prone to. That it has to be the legal principle has to be clearly established beyond debate. I don't think this is an extension because I think it's an application of black letter principles. That coalesce to make this particular action on lawful. Beyond debate. Okay. And so would you, would you say. Bigs makes the out makes the outcome here just preordained. It is. There is absolutely no question. About it, not by itself, but with that and the other cases from the circuit. Yes, I heard you citing Campbell. Uh, you know, we knew as early as 2001 that keeping someone in custody for an unlawful period of time is an 8th amendment violation. That's Campbell in 2001. White 2001 parole is a form of custody. Then you've got these cases. Uh, from the 80s and 90s, and you also cited brown. Where prison officials are liable for deliberate indifference so long as they know of a substantial risk of harm to a group. Of prisoners, so I hear you to be saying, you've got Campbell white, you've got these group cases saying there's liability. If, you know, of risk upon to a group. That all is established before 2005. That's exactly right. And with your permission, I'd like to save the rest of my time for rebuttal. It's fine. Thank you. Miss key capers. Good morning and may it please the court, Wisconsin assistant attorney general Carla key caper appearing on behalf of defendant to police, including Sherry Hicks and Deborah Haley. The question before this court is whether administrative employees in the Department of corrections can be personally liable in federal court for a state sentencing court error. Sable alleges that Hicks and Haley subjected him to cruel and unusual punishment when they failed to discover a sentencing court error. But they had no constitutional duty to do that. Without a constitutional duty, they could not be deliberately indifferent to Sabo and his 8th amendment claim failed. Is it fair to say that his allegation is that they fail to discover the air seems to me reading the complaint is allegation is that they did discover the area. Someone gave them a chart. We don't know who, again, these are allegations and a complaint. And that once they were given the chart and they did indeed realize they had been making this mistake that they did nothing reasonable to mitigate not prevent mitigate the substantial risk of harm to a known eighth amendment violation. And the examples he gives is they could have called the in his brief. They could have called the Department of Corrections. Legal counsel, they could have sent a general letter to all probation officers saying, hey, if you've got a probation or with a class H felony, refer them to review for us, or they could have written a letter to the judge. We just judges judges all judges. So, is it fair to say characterize the complaint the way that you just did? I think it is your honor. There are 2 problems with Mr. Sabo is constitutional claim under the 8th amendment. And the 1st, and probably most basic and important is that Hicks and Haley had no constitutional duty to discover and prevent sentencing for errors in the 1st place. Every case that addresses deliberate indifference to prolonged incarceration involved prison officials failure to properly execute a sentence. So, a different group of people at the Department of Corrections does this kind of work where they're calculating the release date or they're assessing whether good time applies. That's that was their job. This is a different thing that kicks and Haley did their job under state law was to review judgments of conviction for errors. And that was a job responsibility, but there's no case that establishes a constitutional duty for them to do that. So, I just want to make sure I understand your position. So, if Mr. Sabo is attorney. I sent a letter to Hicks and Haley, saying that my client. It is term of probation is calculated incorrectly. Would you look into this, and they decided not to. Is it your position that even in that factual scenario? There is no that Hicks and Haley had no duty to do anything in response to that letter. I would agree that they have no constitutional duty to do that because they have no constitutional duty to discover. Sentencing court errors and prevent them under state only under state law and under the Department of corrections policy. Did they have a duty? Under there, because of their jobs to review judgments of conviction. So, even if he had come forward, they did not have a constitutional duty to do that. Now, we know from the pleadings that they did do something and they would do something because Janelle nearing when she did learn of Mr. I guess I'm, I'm a little, I'm just trying to understand the way you're trying to distinguish the prior case thought that we have where a prison official is notified about a by the inmate or inmate representative about a particular error. And the officer did nothing. And so what you're saying is that the distinction is that in those cases, the official responsibility was to execute the sentence. But here, there's no duty because Hicks and Haley's Hicks and Haley's job was not to execute, but merely to make sure the sentence was correct. That's right. Your honor. The difference between those cases, so there's, there's 2 different points. There's no constitutional duty for Hicks and Haley to discover sentencing for errors by reviewing the judgments of conviction. That was a Department of corrections policy. To review judgments. And then 2nd, for, for those cases where Department of corrections officials were actually looking at different judgments of conviction and calculating release dates there, their duty arises only when someone comes forward. And that's because the failure to protect cases have not been extended in this context. So, in order for Mr. Sabo to be successful, this court would have to extend those cases to this context in the failure to protect cases of finding. Let's, let's take it. For example, a prison prison guard, right? A prison. I'm sorry. Prison guard. Yes. And let's say this is, let's take in the context of a medical need. And so a prison guard has no state obligation to make sure that someone's medical needs are taken care of. And let's say that the state guard comes across an inmate who is suffering from some serious medical need. Right. In that case, the state official, the state guard would still have some obligation to do something under the constitution. Is that what you agree to that? Absolutely. Because so it's not so much dependent upon, I suppose, what their particular duties are under the state law as judge Easterbrook noted, but kind of constitutionally, whether they're aware that a constitutional right is being infringed and whether they're deliberately indifferent to it. Right. Well, what I would say in that context, we're talking about a custodial relationship where the officials, including the guards in the prison, have a constitutional duty to provide adequate medical care, adequate safety, food, shelter. And that arises by virtue of the fact that there is this custodial relationship. Here, there's no similar constitutional duty for Hicks and Haley or officials at the Department of Corrections to review judgments of conviction for errors. Well, I guess. Well, let's as judge, as a judge, Jackson was saying, it's not necessarily review and perhaps just semantic, but to correct. Right. Is there a duty for them to correct known errors? You would say no. Is that correct? For Hicks and Haley to correct? No, there's no duty for them to do that. And even if Sable was in prison, incarcerated, and then Sable's lawyer said, hey, Hicks and Haley, you know, this term of imprisonment is incorrect. You calculated this incorrectly. Can you take a look? Your argument is that even under that scenario, they would have no duty to do anything. No, that's not my argument. My argument is, in that scenario, when they're actually doing the calculating. So, I think what's confusing is that there are 2 different groups of people that do these jobs at the Department of Corrections. There's Hicks and Haley who were in the Division of Community Corrections records office. And their only job was to look at judgments of conviction and put them next to 97309 and see whether those judgments of conviction were correct in their estimation. They're non-lawyers, but they gave it a look. Then there's another group of people who are in the Department of Corrections Division of Adult Institutions. They then look at the different judgments of conviction and calculate release dates and apply good time credit. So, they're doing something affirmative where they're not just reviewing a judgment that a court issued. They're actually doing a calculation. But the judgments they're looking at are the ones that Hicks and Haley reviewed, right? Not necessarily, because Hicks and Haley might only be reviewing a probation term, which I think is what Mr. Sabo's judgment was. It was only a probation term. It didn't include a period of incarceration. I mean, he violated, so then he was put in jail on a whole, but it didn't include a period of incarceration. Everything you're explaining certainly couldn't come to us from the pleadings and then in a motion to dismiss. I struggle then with wondering whether we need, again, factual development so the state can explain who has this job, who has this job, etc., etc., etc. How do you see that as Mr. Sabo's job to do that in the four corners of his complaint rather than meet our very often articulated requirement to plead facts sufficient to raise a plausible claim for relief? And I would agree with you. What I just articulated is not in the pleading, but it's on the department's website. The court could take judicial notice of that. It just provides some helpful background for this case, but I don't think it's necessary for the district court's decision dismissing the Eighth Amendment claim against Hicks and Haley. If you take every allegation in the complaint as true, Sabo still cannot state an Eighth Amendment claim against Hicks and Haley. So, every allegation in the complaint, for example, looking at the number of errors, I think this is maybe a good time to talk about the number of errors. He alleges that there were five to six errors every day that Hicks and Haley, on average, that they looked at. And this was just an estimate on their part in the pleadings. This is paragraph 416 of the complaint. And that works out to about 1000 to 1500 errors a year of any type. It's not just the type of error that we're talking about relating to felony probation terms. It's an error of any kind. And what we don't have in the pleadings is the denominator in that scenario, but we know it was at least a year of work for these individuals. So, we can assume that it was a lot of judgments of conviction that they looked at. And we know from subsequent discovery that it was around 40000 per year. So that's the class of people we're talking about. And I agree that's not in the pleadings, but I think the court can assume based on the pleadings that it was a large group of people that we're talking about. It's not the 1000 to 1500 people. That's just an estimate of any type of error. So, if you want us to take, I don't know if you're going that from there, we must assume then that it's onerous or unreasonable. Would that be drawing an inference in the state's favor at this pleading stage? Well, I don't think the court even needs to get to that just as a practical matter. It's helpful to know. If we were to assume that, would that be drawing an inference in the state's favor at this stage as opposed to Mr. Sables? I don't I don't think that that fact, the fact that they reviewed judgments and we're talking about a year plus period of time of reviewing judgments. I don't think that. Goes in either. No, I'm saying the inference you're leading to from there that it might be onerous or unreasonable to take some action to address. I don't think the court even needs to decide whether it's onerous or unreasonable because Mr. Sables claim now is not that they were supposed to go back and re, review. It's only that they were supposed to take some reasonable action. But if they had no constitutional duty to review judgments of conviction in the 1st place, we don't even know what have to decide what the next step was. They could not have been deliberate indifference, deliberately indifferent to stable. If they did not have a constitutional duty, I want to go back and look at the failure to protect cases. I think in order for Mr. stable to be successful, he has to extend those cases in this context. And those cases are ground be buds and farm every Brennan. And in those cases, as I discussed, they're different because the, there was a constitutional duty because of the custodial relationship to provide safety to these prisoners while in custody. And here, as we've been discussing, there's no similar constitutional duty to review judgments of conviction. But those, those cases are different for another reason. And in those cases, the officials action or in action. Contributed to the risk, so that what they did happen before the actual harm happened and here. Sable does not allege that Hicks and Haley did anything to contribute to the risk or to make matters worse. And in fact, the Department of corrections would not have had to have doesn't have to have this policy at all. They wouldn't have to review judgments at all. They've just decided as a policy matter that they would do that. And I also want to discuss 97309 sub 2 M, which is the provision that we've discussed a little bit about. At one point, the Department of corrections thought it had authority to unilaterally commute sentences. It has since determined that it doesn't. We know that from the pleadings, because when Sable came forward, Janelle nearing did not. Cross off the judgment, she suggested that his attorney. Go to the sentencing court, and then she also wrote a letter to the sentencing for it. And then what was the process back in 2004 and 2005, the process in 2004 and 2005 is as alleged in the complaint. So, they could have unilaterally changed it and that's well, they did, whether that was appropriate or not. They now think that is not appropriate. And they no longer do that. So, moving on to qualified immunity. In 2005, when Sabo alleges that Hicks and Haley violated his constitutional rights and any time thereafter. No case clearly establishes that prison record keepers who learn about a type of sentencing court error. Have a constitutional duty to discover an error as to a particular person and prevent the prolonged probation. The cases addressing prolonged incarceration are not sufficiently particular lies to this case. For at least 3 reasons 1st, the existing cases all involve an error in prison officials failure to execute the sentence. So again, it's their calculation. That was the air here. Hicks and Haley. We're just reviewing judgments and no case clearly establishes. A constitutional duty to review judgments of conviction. And 2nd, those existing cases all involve situations where the defendants were aware of a particular person. Somebody came forward, or they learned in some other way about a particular person. Not some air, possibly affecting a group of people, but a particular person. And here, even if this court wanted to extend the failure to protect cases to this context, that's never been done before. So that would not be clearly established law. And 3rd, the case is addressing prolonged incarceration, not prolong probation. And this court might decide that that that difference doesn't make doesn't matter here, but no case clearly establishes that for long probation is cruel and unusual punishment. And indeed, as a result of his excessive probation, he did end up with prolonged incarceration because he ended up being arrested and kept in. Jail. Beyond the term that he was supposed to be. Free, so there was, it just so happens. To be an, a confinement aspect to even Mr safe those case, would you agree? That's right. Because he violated the, his rules of probation. He was kept on a parole hold for some amount of time. So there was some incarceration. But, um, no case has clearly established that along probation, prolonged incarceration by virtue of being revoked that that clearly establishes a constitutional violation in this context. Ultimately, this court, this case boils down to state officials doing their jobs. They might not have done them perfectly, but their actions did not rise to the level of an 8th amendment violation. For these reasons, we would ask that this court affirm the district court's decision. Dismissing the 8th amendment claim against Hicks and Haley. Thank you. Mr. Olson. This case. This case is easier than it otherwise might be in a couple of key areas that go to the issue of qualified immunity. Qualified immunity is a good thing. It's there to keep public officials from having to act at their peril in gray areas of the law, where they're close to the line. Couple of areas in this case where that's not case. One is with respect to the question of duty. Were these the kind where these people situated such that they had a duty to take some action when they gained this knowledge of serious risk of constitutional injury. The best formulation I can think of is judge grease box formulation in Watford versus Miller, where he says, if you're in a position where you're pretty sure if you don't do something about this serious risk of what you've gotten notice. Nobody else is going to you have a duty. It's right. As judge Easterbrook observed in the works versus ramish opinion that public officials don't have a free floating duty to set things right. But these people were in the very epicenter of duty. They were like the doctor who reads the positive tuberculosis test for the inmate. That doctor knows if he or she doesn't do something about that result. To address that risk. Probably nobody else in the system is going to do anything either. The second area where this case is easier than otherwise might be is in the area of the nature of the response. When you learn of a serious risk of constitutional injury. That your obligation as a public employee when you learn of that risk is to do something reasonable to address it. Now, you can imagine a lot of cases where public employees would be doing something. And we'd be here arguing about whether it was reasonable or not. And the qualified immunity proponents would have a lot of risk for their meal because the line between what's reasonable and what's not when it comes to responding to a serious risk. Might be hard to draw in some cases, but it's not hard here because these folks did absolutely nothing. So we don't have to worry about whether they might have been confused about where the boundaries of reasonable action were. They did nothing. In their brief, the state says that plaintiff has to show that the unconstitutional action was the cause of injury. That's wrong. Very clear. It can be one of several causes. In Whitlock versus Brueggemann, this court in 2012 said there are often multiple proximate causes. And it does not matter that other acts are also proximate causes of the ultimate violation or that some of those acts were taken by an actor who is absolutely immune, such as in this case, the sentencing judge. The state and the dissenting opinion thought that this case was controlled by parole, the P-E-R-R-A-U-L-T parole case. And in that case, there were allegations about Hicks and Haley, but those allegations eventually didn't have anything to do with what happened to parole because he was not on probation. He was on extended supervision. How did those allegations get in his complaint? Well, he copied one of my old complaints from another case, and he was over-inclusive. In terms of qualified immunity, the state makes the point in its brief that Hankins versus Lowell, the case where this court applied the deliberate indifference standard to a parole agent and held that parole is a form of custody. Maybe that's why that standard applies. It wasn't decided until after the events at issue, so they say that fact supports their qualified immunity argument that it wasn't clearly established that parole, probation, and extended supervision are forms of custody back in 2004-2005. Well, it was because the cases that Hankins versus Lowell cited for that proposition all came from before the events at issue in this case, including Jones versus Cunningham, the U.S. Supreme Court case where they said parole is a form of custody and explained why, because it's sole owners. This court had said on multiple occasions before 2004 that probation is a form of custody as well. In Dralinger versus Milligan, 552 F. 2nd. 1220, and Fawcett versus Bablage, 962 F. 2nd. 617. Thank you very much. Thank you. Our thanks to both counsel, the case is taken under advisement and the court will be in recess. Thank you.